Michael Spencer, Tabernacle et al., v. Stephen Nigrelli Good to see you again. Good to see you as well. Esther Marie de Cueva for the State Defendant. The place of worship provision is also consistent with the First Amendment. New York's law does not burden the plaintiff's religious practice, because by Spencer's own admissions, firearms have no religious significance to his religious practice. And New York's law allows plaintiffs to discharge any religious obligation to protect congregants through alternate means, including through the carriage of firearms consistent with the exceptions for law enforcement and security guards that are applicable to all sensitive locations. The injunction should be reversed. I'll start with the free exercise claim, which fails because there is no burden on Pastor Spencer's religious practice under his own admissions. I would direct the court to page 74 of the record, which is his declaration, where he states, I believe that I have a moral and religious duty to take reasonable measures to protect the safety of those who enter the church. He then says, I believe that providing for the physical safety of the church is my religious act and duty as a pastor. Nowhere in his declaration or in his preliminary injunction hearing testimony does Spencer state that carrying firearms, specifically carrying firearms, has a religious significance to that underlying religious practice. In that way, this case is very similar to the Greenhaven decision from this court, where the court rejected a First Claim raised by a Quaker community group based on the rescheduling of a meeting between the community group and incarcerated individuals that had originally been held on Saturdays and was rescheduled to a weekday. And what the court concluded there is that the act of meeting was of religious significance to the Quakers, but the act of meeting on Saturdays was not. And that is the same analog here. The act of the idea, I mean, doesn't he assert that he views it as his religious and moral duty to personally protect the flock? And so doesn't that change the nature of it? It's not described necessarily as, I feel a duty to make sure that my church has security. I feel a duty to personally protect my flock. Well, again, Your Honor, his own statements make clear that carrying firearms  He himself does not carry firearms on Sundays so that he can focus on his responsibility in preaching the gospel, or on Thursdays when he teaches his foundational faith course. That's at pages 199, 231, and 233 of the record. Several pastors in his church also do not carry firearms, and he does not consider it a failure of their religious obligation. That's at page 237. He also does not consider it religiously necessary for every member of his volunteer security team to carry firearms. In fact, he does not know which of them have permits and which do not. That's at pages 224 to 225 of the record. For that reason, you simply don't get to the analysis of neutrality and general applicability, because this case is exactly like Greenhaven. As the 11th Circuit again said in- It's not exactly like Greenhaven. We're not in a prison to start with, which profoundly influences that whole decision, right? No, Your Honor. You have the power of a warden to keep order in the prison. All of the justifications that were offered have to do with that obligation. It's a rather different scenario. Well, Your Honor, the free exercise claim in that case was brought by the non-incarcerated community group members, and the discussion of the burden on religious practice was about the burden on them, about their ability to take time off from work to attend on the weekdays, or their ability to-  at a time when the prison is overburdened with visitors and has to take extra security obligations. We're not talking about apples and oranges here for sure. Well, I think the setting that we're talking about may be apples and oranges, Your Honor, but the concept of how one evaluates burden on a religious practice is quite the same. As the 11th Circuit said in Georgia Kerry, the free exercise clause protects religious beliefs, not secular preferences. And that is exactly what this court noted in Greenhaven. The inconveniences to the community group in that case were meaningful. Fewer people might be able to attend the meetings. Fewer people might be able to take time off. But the court was clear. Don't we have to accept the pleading that a pastor believes that he has the personal religious obligation to protect his flock? And if that is so, then why can the state prevent him from designating which of the members of his congregation can provide security? He can designate who will be the ushers and who will be in the choir. Why not for security as well? Well, because again, Your Honor, taking Pastor Spencer's own words from his declaration and testimony, he does believe he has a religious obligation to protect this flock. He at no point says that firearms are a component of that religious belief or have religious significance. But it would be one way of implementing that religious obligation, would it not? It might be. But there is no religious significance to that way. And that is exactly what the 11th Circuit said in Georgia Kerry. The free exercise clause protects religious beliefs, but not secular preferences. To the extent there is a secular preference to carry firearms in order to carry out a religious obligation, that does not transform carrying firearms into a religious activity. Well, I mean, that has to do with the ability to designate people who would say, please don't shoot at this congregation. But that's not very effective, presumably since this whole matter is about the carrying of arms. We're talking about guns. Well, if Your Honor is referring to the Establishment Clause claim, that really does fail for very similar reasons. Because by Spencer's own admissions, firearms play no overt role in church operations. He has never discussed firearms with his supervising bishop. He has never discussed firearms with his congregation. So to the extent you're referring to the Establishment Clause claim, it really fails for similar reasons. But even if, for purposes of the free exercise claim, you moved on to neutrality and general applicability, the state would still prevail. The purpose of the neutrality and general applicability inquiry is to ferret out government discrimination against religious activity. You do that by looking at what activity is being regulated and how. That's actually exactly what the Supreme Court did in the Roman Catholic Diocese case. It concluded that the state, in that case, was targeting worship services, the activity of worship services. Here, what New York's law targets is the carrying of firearms into certain sensitive locations, including places of worship. So as long as you've got enough sensitive locations in the rest of your law that are analogous to churches in the appropriate ways, then you get past those pandemic cases. Is that the notion? Well, we have several different theories of the relevant comparators, each of which mean that those pandemic cases are not applicable. The first theory is that you look to the activity that is being regulated. And in this case, the activity that is being regulated is carrying a gun. Even if you accept that Pastor Spencer is carrying a gun for a religious purpose, the plaintiffs do not assert that that mere act is always necessarily or predominantly a religious activity, nor do they assert that the act of carrying a firearm for religious purposes is treated any differently than the act of carrying a firearm for purely secular purposes.  place-based, then you're right, Your Honor. The right form of comparison is between places of worship and other secular sensitive locations where the act of carrying firearms is treated identically. What the plaintiffs argue is that the right comparator is between places of worship and non-sensitive secular locations. But that is not the right form of comparison. And it's not the right form of comparison because the designation of places of worship as sensitive is based on secular considerations about the specific risks to public safety that are posed by firearms in sensitive locations. What about malls? I mean, people, crazy people shoot up malls all the time. So isn't that a sensitive location that is not the subject, that is not regulated while places of worship are regulated? It is not the right comparator, Your Honor, because the state has made a determination that places of worship are uniquely susceptible to risks of shooting. By the plaintiff's own acknowledgment, by the description of some of the amici, there have been disproportionate threats against places of worship. In this case, we really don't have to decide the question generally because we have admissions that allow us to decide the case without reaching the broader principle. That's certainly the case with respect to religious burden, Your Honor. And it's also the case with respect to the comparator. By the plaintiff's own admission, by the admission of amici, there are many threats, many more threats against places of worship than against other types of non-sensitive secular locations. And the state correctly determined that in light of that additional risk, that it was prudent to exclude guns altogether from places of worship subject to exceptions for law enforcement or armed security guards. And again, the plaintiffs assert that those are not sufficient exceptions that allow them to engage in their religious practice. But the plaintiffs have, again, admitted that they were not even aware of the exceptions before filing the lawsuit and made no effort to exhaust themselves of the exceptions, whether by hiring external security guards or if that's not agreeable to them by recruiting people from the volunteer service to get qualified. Is there a change of law in the offing that may moot this or alter the terms of the claim? Possibly, Your Honor. The governor's budget bill did propose an additional exception that would allow places of worship to designate non-security guards to carry weapons to preserve the peace. The budget process is still ongoing, so it is unclear whether the legislature will ultimately adopt that proposal. But it is anticipated to be concluded in the next several weeks. Thank you, Your Honors. Good morning, Your Honors. And may it please the court, Aaron Murphy on behalf of Pastor Spencer and his Tabernacle Church. We certainly agree with the arguments you've already heard this morning about why this particular provision violates the Second Amendment. But I would like to start by talking about why it does violate the First Amendment and why the district court was entirely correct to reach that conclusion. In effect, the state has put my clients to a choice, Mr. Pastor Spencer and his congregants. The state has said, if you want to carry firearms for self-defense, you cannot enter into his Tabernacle Church to engage in religious worship. Right then and there, you have an obvious burden on religious exercise. And while I will certainly happily talk about why this burdens the particular beliefs of Pastor Spencer, who testified that carrying firearms is part of how he carries out his religious duty to protect the flock, ultimately, we don't think that matters. I want to be very clear that when you have a law that specifically regulates how people may engage in worship, that's a burden on free exercise in and of itself, regardless of whether carrying firearms has some particular religious significance. And I think you get that principle from Tandon itself. Tandon, of course, was a case that dealt with religious worship in the home, how many people could gather in a house to worship. If somebody wanted to engage in religious, go to religious services naked, and the pastor doesn't have a particular problem with that, it would be unconstitutional to enforce indecent exposure laws? Of course it wouldn't be unconstitutional, but it would be a burden on religious exercise. It would just be a constitutional burden on religious exercise, because presumably, unlike here, it would be a burden pursuant to a facially neutral and generally applicable law. Well, but so is this. I mean, there's a Second Amendment reason why this is different than, you're at the right of an individual person to go to church or mosque or whatever in order to engage in religious services. And you're saying, to say you can't go there with a gun burdens the religious, your ability to go to church the way you want to go to church. And I'm having a little trouble seeing why putting the Second Amendment to one side, which I agree we aren't going to do here. And you, like the previous Mr. Hardaway, have Second Amendment issues as well, and I recognize that. I'm just trying to understand this argument, because I thought the case was about the protection aspect. And you're saying there is a First Amendment right to attend a worship service the way you want, and then there's a burden. But then you say, well, OK, there could be a neutral law. Why isn't this a neutral law? Sure, so let me take those questions. It's really two questions. So first, to start with the burden. I really do think Tandon is quite instructive here, because what that was was a burden on how many people could gather in a home to engage in worship. I don't understand the Supreme Court to have said, well, that's only a burden if you demonstrate that you have a specific religious mandate for three families to worship in a home. All that mattered was what they were doing, they were gathering to do was worship, and California was putting a restriction on that. So I do think just for that question of whether there's a burden on free exercise, if you're regulating the act of worship, saying while you worship, you can only be in this place with this many people with these particular items, that's a burden. Now, then you get to the question of, is that a burden that raises constitutional concerns? And this is not a facially neutral law, let alone a generally applicable one. First, in the provision that we're challenging, subsection C, by its terms, applies to only one place. Houses of worship, places of worship, or religious observation. So we can't look at the other? You can look at the rest of it, but I mean, I will say, I think that essentially when the state has a law that, on its face, singles out religious places, that it's really their burden to prove that notwithstanding that facial discrimination, the law is actually neutrally applicable. Well, that's what they're doing. Excuse me, this is not a law that applies to every place. And in that sense, it's not entirely generally applicable. But it is applicable to, if you had a fire code that applied only to certain kinds of buildings, and churches was one of them, because of the structural similarities of a church to some other type of building, it wouldn't have to apply to other types of buildings that didn't come under that. What it would have to apply to, to quote Kandon, is any comparable secular activity. And as Kandon said. So what's your comparable secular activity is what I'm looking at. Sure. Again, because they've got a problem with the Second Amendment here that other people are going to say most of those other things are unconstitutional. But assuming that the sensitive locations stand up, can you give me an example of something that looks to them or should look to them like a sensitive location that isn't a church? And let me just start with the legal principle to animate the examples I'll give. So what Kandon said is in determining comparability, you have to look at the justification that the state itself offers for its regulation. And their justification, their principal justification I understand to be, they're worried about places that are crowded and may have some limits on the means of egress. And it could be a target for. Could be a target, fine. But I think that right then and there, if that's sort of their justification, then you have the problem of, OK, why is it OK to carry firearms in shopping malls, in retail stores, in restaurants that don't serve alcohol, in coffee shops and salons, in office buildings, in all manner of places. And what Kandon says is it is no answer that the state treats some comparable secular businesses or other activities as poorly or even less favorably than religious exercise. For free exercise purposes, all that matters is that there's anything out there comparable that they treat better. And I just don't see how you could possibly conclude that there's no other place in this law that is a place where people gather in crowds and there may sometimes be limited means of egress. So for purpose of that First Amendment analysis, the Supreme Court has been pretty clear at this point that it really is essentially a most favored nations clause. It doesn't matter that churches and mosques and synagogues are frequent targets of violence. I mean, I don't know about malls, but malls do see it. I don't know about any of this, really. The legislature has to presumably know more about it than I do. But at least the things I see on the news are if somebody goes into a shopping mall and then shoots somebody in a dispute, and everybody runs out of the mall and they close down the mall and all that, I don't know that mass shootings in malls are the same kind of problem as we've with some of the other places that are on their list. Your Honor, the state has offered three justifications. And the justifications that it said is how they identified sensitive places, none of them was. We picked the places that we consider to be the most vulnerable. So I mean, we're not here to dispute. Part of our concern with this law, and I would like to talk briefly about strict scrutiny, is that we do worry that houses of worship are targets. But when you get past the problem that this is not a law that passes sort of the comparability test that's set out in Tandon, it's facially discriminatory and it doesn't apply to all comparable places, then you get to strict scrutiny. And boy, I mean, to me, if your concern is that you're worried that places are targets, it barely even strikes me as irrational, let alone a nearly tailored response to say, our answer is we're disarming you. I mean, to go back to what was discussed. We're not only disarming you, but we're disarming the proprietor from the ability to select people that he or she trusts to provide security. Precisely, we're taking what we see as soft targets and making them even softer. I mean, that makes no sense at all. And to go, you know, just to marry up sort of the First Amendment and Second Amendment pieces of this, as you heard earlier, one of the considerations that comes in in thinking about sensitive places from Second Amendment perspective is, well, is the state coming in and at least supplying the security it's taking away? And here, it's not as if the state said, you know, we're gonna disarm you, but don't worry. We will make security guards available to you at no cost. We're gonna take over that burden since we've deprived you of the means of defending yourself. We're just leaving you as sitting ducks unless you happen to have the resources to go hire people that we, the state, have decided are approved security guards. So right then and there, I just, you have a massive problem with the tailoring, but then you also have traditional tailoring problems here, such as, you know, this law applies to houses of worship, regardless of whether there's crowds. It applies the same way on a weekday when there's 15 people at the massive, you know, Horseheads Campus of my client's church, just as it applies when there's 700 people on Sunday. It applies without regard to whether there's children present, how many adults are present, any of that. So it's vastly overbroad, even as to the interest that the state's asserting, and this is, of course- I assume you're gonna answer this by saying you haven't had the opportunity to study the law, but I'll ask it anyway. If the state legislature passes this law that would give churches the ability to decide for themselves who can be an armed security guard, would that solve your problem? I don't think it completely solves the problem because, frankly, what we think the right answer is for churches to be treated like private property owners, setting aside the default debate you've been having earlier, but the churches should be allowed to just make the decision for themselves, whether they wanna welcome the carrying of firearms or not, and they shouldn't have to combine that to people that they choose to designate security guards. Now, to the extent what the state is really proposing in this new law is, you know, you can designate security guards, and you can do that by posting a sign at the church that says literally anyone who enters our premises is now considered a security guard. I mean, I find that just a really bizarre notion, and I don't know why at that point you wouldn't just put churches under the provision of the law that allows private property owners to make their own decision, because otherwise you've just got a law in the books that's super confusing and chills both Second and First Amendment rights by leaving people uncertain as to whether, you know, am I someone who just goes to church carrying my firearm, or am I now suddenly a security guard just because my pastor told me I am? I see I'm out of time, so unless anyone has any further questions. Great, thank you. Thank you. Well, again, three points again on rebuttal. The first is that the plaintiffs at this argument tried to transform their free exercise claim into something that it is not in the complaint. The plaintiffs have asserted that this is a claim that is brought on behalf of the congregants.  or advanced below, and it is not a theory that the plaintiffs And in fact, Pastor Spencer, again, this is at page 200 of the record, said that he does not know which of his congregants carry. This is not an issue that he's ever discussed with his congregation. It's not an issue that he's ever discussed with his supervising bishop about the congregation. This is really an attempt to transform this free exercise challenge about a particular person's stated religious practice into a claim about the religious practice of many other people who are not plaintiffs in this case. And we know that from the relief that counsel just asked for. The relief is not that the pastor gets to designate particular people to be security guards and carry for that purpose, which is the relief that was requested below and was discussed extensively at the PI hearing. The relief is for anybody to be able to enter the place of worship with firearms at any time subject to the place of worship, barring them from doing so. That's just a fundamental transformation of what this case was argued as below. Second, the plaintiffs suggest that anything that one does at a place of worship is necessarily a part of religious activity or practice. So any time that the state regulates something that occurs within a place of worship, they're infringing on religious activity. That's just not. I'm puzzled about one thing that Ms. Murphy talked about. My instinct in a certain way is to say, well, the church is sort of like theaters and libraries and museums and other places of cultural significance. There are places of quiet contemplation and so on. And so this is treating like places alike. But it is true, isn't it, that in the pandemic cases, the court told us that we can compare to grocery stores. Yes, Your Honor, but the reason the court told us that is because it looked to what was being regulated when it occurred in the place of worship. Yeah, but if you're talking about, as she said, if you're talking about places with large numbers of people in them, interior spaces with limited egress and ingress, that starts to look like a lot of these commercial establishments. Now, I'm a little surprised to hear pastors saying, we're just like a nail salon. But in the relevant sense, what's the difference exactly? Where other kinds of businesses, and again, that may not be the way we ordinarily think of religious institutions, that other kinds of businesses, the proprietor can say, you can come in with a gun. This kind of business not, and it's got the special extra rights of being a religious institution. Why doesn't that mean that they're being discriminated against? A couple of answers to that, Your Honor. One additional reason for why places of worship are designated as sensitive is that they are sites of constitutionally protected activity. So in that sense, they do share a feature with other places like polling sites or courthouses that are dissimilar from private commercial establishments. Second, in those pandemic-related cases, what the court said was being regulated was gathering for worship services. It is not true that those cases stand for the proposition that anything that occurs in a place of worship is necessarily a, regulating something that occurs in a place of worship is necessarily a regulation of religious activity. That simply cannot be the case. In those pandemic-era cases, the Supreme Court actually specifically focused on statements made by the then governor that characterized this restriction as being a restriction about worship services, which we don't have here. And the last point that I'd just like to make is that the legislature is entitled to make determinations of sensitivity based on empirical evidence or data. It is not correct that the state has never defended this regulation because of the specific threats that are posed to places of worship. We've made those arguments below and on appeal. This law does not make places of worship softer targets. What this law says is that the risk of firearms in these places is so substantial that we are directing the use of firearms to security guards and other trained professionals that can use these weapons responsibly. That is, for purposes of the First Amendment and the Second Amendment, a determination the legislature is entitled to make. Thank you. Thank you. We'll take that matter under advisement.